IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

FILED
AUG 06 2008
AUG 06 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel

MICHAEL THRELKELD K-66117

PETITIONER

vs.

STATEVILLE CORRECTIONAL CENTER
Warden Terry McCann

)
)
)
)
)
)
)
)
)
)
)

Honorable Judge Hibbler

Magistrate Judge Nolan

Case Number 08C 1479

Case Number of State Court
Conviction: No. 00CR 4537

Honorable James B. Linn

MOTION TO DENY THE ATTORNEY GENERAL'S MOTION THAT WAS
RECENTLY FILED.

The Petitioner Michael Threlkeld, respectfully moves that
this Honorable Court denies the Illinois Attorney General's request,
for the Petitioner to produce a copy of his petition for relief from
judgment petition currently pending. The Petitioner would also like to
add, as well as request, that this Honorable Court judge disregard any
referance that the Attorney General has made to and towards the pend-
ing habeas corpus petition, as a mixed petition.

BACKGROUND

1.)
The Petitioner Michael Threlkeld, identified a prisoner K-66117 is
in the custody of Terry McCann, Warden of Stateville Correctional

1.)

Center in Joliet Illinois.

2.) Following a bench trial in Cook County, case No. 00CR 4537, the Petit-
ioner was convicted of first degree murder, and sentenced to 35 year's
imprisonment.

3.) The Petitioner appealed to the Illinois Appellate Court, First District,
presenting the following issue's :

A.) he was denied a fair trial by introduction of evidence of his prior
bad acts.

B.) the State failed to prove him guilty beyond a reasonable doubt;
and

C.) he was denied the effective assistance of counsel because trial
counsel failed to call Nikki Whittingham to testify in his defense.

On September 7, 2004, the State Appellate Court affirmed the Petition-
er's conviction and sentence.

4,) The Petitioner filed a petition for leave to appeal (P.L.A) to the
Illinois Supreme Court raising the same 3# issues presented to the
Appellate Court.

And on January 26, 2005, the Illinois Supreme Court denied the P.L.A.
petition.

5.) On July 14, 2005, the Petitioner mailed a petition filed pursuant to

2.)

the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-2.1, et seq.
alleging that he was denied the effective assistance of trial counsel
:

A.
   failed to seek a reduced charge of reckless homicide.

B.
   encouraged defense witnesses to testify falsely by withholding excul-
   patory testimony; and

C.
   failed to expose perjury committed by the State.

   The trial court summarily dismissed the post-conviction petition on
   August 2, 2005 . . . which was also dismissed egregiously, as to where
   the Petitioner's trial judge failed at not dismissing the Petitioner's
   post under section 5/122-2.1, in which a written order as well as the
   finding of facts were not submitted. And where the judge failed as well,
   in not dismissing the Petitioner's post as frivolous . . . or patently
   with-out merit.

6.)
   The Petitioner appealed to the Appellate Court, asserting that trial
   counsel was ineffective for failing to pursue and present evidence to
   support a conviction of the lesser included offense of reckless homic-
   ide, based upon the Petitioner's voluntary intoxication.

   And it should also be noted, just as well as asserted, that the Petit-
   ioner herein made several attempts towards the assistance of his atto-
   rney: in which to bring up and also argue about the entity of the dis-
   missal of his post-conviction petition.

                              3.)

Particularlly, that the trial judge, Honorable James B. Linn, failed at not dismissing the Petitioner's post under section 5/122-2.1, in which the written order as well as the finding of facts were never submitted. And that the presiding judge failed at not dismissing the Petitioner's petition as frivolous . . . or patently with-out merit.

The Petitioner herein would also like to assert that on January 8, 2007, that the Petitioner's appellate counsel, Ms. Holly J.K. Schroetlin, corrosponded back with the Petitioner in regards to amending his petition. Stating verbatim but not precisely as written : that she, Ms. Holly J.K. Schroetlin, would not be able to amend the said petition. Disregarding the Supreme Court Rule of section 651 (C). Which states verbatim that ;

. . . the Circuit court may dismiss an indigent petitioner with-out counsel under section 122-2.1, bitterly, but as long as that petitioner files a timely notice of appeal, the Appellate court must under Rule 651 (C). Appoint counsel, and allow any amendments to the petition filed pro se that are necessary for an adequate presentation of petitioner's contentions. ( 107 Ill. 2d R. 651 (C).

Futhermore, it also states that the attorney appointed to represent an indigent petitioner would examine the record of the proceedings at the trial and then amend the petition that had been filed pro se, so that it would adequately present the petitioner's constitutional contentions. And that the statute can not perform its functions unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints , shapes thoses complaints into appropriate legal form and presents them to the court.

The Petitioner's appellate counsel denied the Petitioner his legal right to amend his petition. Disregarding the Supreme Court Rule of section 651 (C).

And as a result, which was determined on August 20, 2007, the Illinois Appellate Court, First District, affirmed the dismissal of his post conviction appeal.

7.)
The Petitioner filed a P.L.A., raising the same 3# issues presented to the appellate court, plus a claim that he was denied due process and equal protection because the trial judge, Honorable James B. Linn, failed to submit written findings of fact and conclusions of the law, as required by 725 ILCS 5/122-2.1 (a) (2), when dismissing his post conviction petition. The Petitioner's appellate counsel denied him the legal formality to amend his petition.

The Petitioner Michael Threlkeld, had no other State remedy left to exhaust the said issue . . . except for in his P.L.A. petition. And on November 29, 2007, the Illinois Supreme Court denied the P.L.A. petition.

8.)
On February 28, 2008, the Petitioner herein Michael Threlkeld, filed a petition for relief from judgment, pursuant to 735 ILCS 5/2-1401. Alleging that :

A.
that his trial counsel with-held vital facts and evidence that was extremely important, in which would have more than likely changed the outcome of trial.

The Petitioner herein is in no way form or fashion, concealing any

5.)

form of evidence from the Court herein. The issue raised within his 2-1401 petition, has absolutely nothing at all to do with the 5th issue raised about during his habeas corpus petition. The Petitioner's relief from judgment petition was denied unsuccessfully on March 17, 2008. <u>And an appeal is currently pending from the denial of that petition</u>.

9.)
   On March 10, 2008, the Petitioner filed the instant habeas corpus petition.,. alleging that :

   A.
      he was denied a fair trial by the introduction of evidence of his prior bad acts.

   B.
      the State failed to prove him guilty beyond a reasonable doubt;

   C.
      he was denied the effective assistance of counsel because trial counsel failed to call Nikki Whittingham to testify in his defense.

   D.
      his trial counsel was ineffective for failing to pursue and present evidence to support a conviction on the lesser included offense of reckless homicide based on the Petitioner's voluntary intoxication; and

   E.
      he was denied due process and equal protection because, when dismissing his post-conviction petition, the trial judge failed to submit written findings of fact and conclusions of the law as required by 725 ILCS 5/122-2.1 (a)(2).

6.)

ARGUMENT

The Petitioner Michael Threlkeld, has exhausted each and every one of his five pending issues to the highest State Court respectfully. However, the 5th claim is the only claim, alleging a due process and equal protection violation, was the only issue unsuccessfully in not being argued within the Appellate Court therein. But the said issue was therefore brought about during the timely filing of his P.L.A. petition.

The Petitioner herein respectfully submits to this Honorable Court evidence, as well as proof, in which the Petitioner's appellate counsel Ms. Holly J.K. Schroetlin, denies and disregards the amending of his appeal. The Petitioner herein, had no other State remedies available to him, in which to bring up or argue it in its entity . . . except for in the sake of his P.L.A. petition.

The Petitioner understands that every State prisoner, be it he or a she, must give the State Court one full opportunity, in which to resolve any constitutional issues by invoking one complete round of the States established appeals process. And that this same prisoner, must fairly present those claims to each appropriate State Court. But how could he, the Petitioner herein do so, if his appellate counsel, Ms. Holly J.K. Schroetlin, while upon appeal denied him his legal right to do so.

Section 651 (C) gives clear instructions in regards to those on appeal. Stating that :

the Circuit Court may dismiss an indigent petitioner without counsel under section 122-2.1, but as long as that petitioner files a timely notice of appeal, the Appellate Court must under

7.)

Rule 651 (C). Appoint counsel, and allow any amendments to the petit-
ion filed pro se that are necessary for an adequate presentation of
petitioner's contentions.

The Petitioner's appellate counsel failed to comply with the
Supreme Court Rule of 651 (C). And now for the foregoing reasons, the
Petitioner herein hopes and prays that this Honorable Court understands
and respects that number one; that the Petitioner did not file a mixed
petition. And number two: that the Petitioner herein had no other State
remedies available . . . except for the Supreme Court. The Petitioner
respectfully request that his Habeas Corpus petition be allowed for
futher proceedings.

## CONCLUSION

And now, for the foregoing reasons, the Petitioner Michael Threlkeld, hopes and prays that he has given the Court herein good cause for not earlier presenting the 5th claim mention for one complete round of State Court review. The Petitioner also request, that the Court herein would also stay proceeding forward on the instant petition pending.

Respectfully submitted,

Michael Threlkeld

Pro se Petitioner

P.O.BOX 112
STATEVILLE C.C.
JOLIET ILLINOIS
60434

K-66117

CASE NUMBER : 08C 1479

HONORABLE JUDGE WILLIAM J. HIBBLER

CERTIFICATE OF SERVICE

            I hereby certify, that on 8/1/08 ,

I, Michael Threlkeld, have mailed off three copies of my petition for

relief from judgment now pending on appeal to the Court herein. Also

enclosed is the Petitioner's responding motion.


            Respectfully submitted

            Michael Threlkeld
            Pro se Petitioner
            P.O.BOX 112
            STATEVILLE C.C.
            JOLIET ILLINOIS
            60434
            K-66117
            CASE NUMBER 08C 1479
            HONORABLE JUDGE WILLIAM J. HIBBLER

                        10.)



# OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

**203 NORTH LASALLE STREET**
**24TH FLOOR**
**CHICAGO, ILLINOIS 60601**
**TELEPHONE: 312/814-5472**
**FAX: 312/814-1447**

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

January 8, 2007

**HOLLY J. K. SCHROETLIN**
ASSISTANT APPELLATE DEFENDER

Mr. Michael Threlkeld
Register No. K-66117
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434

Dear Mr. Threlkeld:

I received your letter about amending your petition to add supporting documents. I agree with you that this information would be helpful to support your claim. However, at this stage the appellate court is only concerned with whether or not the circuit court made the correct decision on the petition. This means that the court will look only at the petition as it was when the circuit court dismissed it and consider whether the court improperly dismissed the petition given the information available at that time. Unfortunately, the appellate court will not now consider any evidence to support your claim that the circuit court has not already reviewed.

This does not mean that you cannot add this documentation later. If your appeal is successful and your case is remanded, you can at that time amend the petition to add this report and other supporting documents for the circuit court to consider.

I hope that by now you have received a copy of the brief filed in your case. Since this has already been filed and it is not the appropriate time to amend the petition, there is no reason to ask for an extension of time. As always, please write me with any additional questions or suggestions.

Sincerely,

HOLLY J. K. SCHROETLIN
Assistant Appellate Defender

IN THE CIRCUIT COURT OF THE FIRST

JUDICIAL CIRCUIT, COOK COUNTY, ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court |
| | ) of Cook County, Illinois. |
| Respondent-Appellee, | ) |
| | ) No. 00 CR 4537. |
| -vs- | ) |
| | ) Honorable |
| | ) James B.Linn, |
| MICHAEL THRELKELD, | ) Judge Presiding. |
| | ) |
| Petitioner-Appellant, | ) |

---

VERIFIED PETITION TO VACATE VOID JUDGMENT pursuant to CHAPTER 735,

ARTICLE II CIVIL PRACTICE PART 14. POST JUDGMENT section 5/2-1401

(F).

---

5/2-1401 RELIEF from JUDGMENT. (F)

READS AS FOLLOWS : NOTHING contained in this section affects any exist-

ing right to relief from a void order or judgment, or to employ any

existing method to procure that relief.

The Petitioner accordingly seeks the following remedy :

The vaction of his void sentence/judgment or a retrial.

It is now, that the instant Petitioner comes before this Honorable

Court . . .

JURISDICTION OF THIS COURT AND SCOPE OF RELIEF FROM JUDGMENT VEHICLE

THIS HONORABLE COURT'S first and foremost duty is to ensure that

justice under the law is served. Ill. Const, art.1.sec.12. In appro-

priate case, the principle of comity and finality must yield to the

imperative of correcting a fundamental unjust incarceration.

ENGLE v. ISAAC,456 U.S 107,135(1982).

The instant Petitioner has been dealt a monumental injustice and now petitions this Court to prevent a futher miscarriage of justice. The Illinois Supreme Court, after reviwing the "legislative intent" of relief from judgment vehicle made the following findings : In defining the relief available under the statute known as (2-1401), the General Assembly used the broadest possible terms. The statute states that it abolishes various enumerated writs, legal and equitable, and that "all" relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case by proceeding here-under. People v. Lawton,212 Ill.2d 285,288 Ill.Dec.638,818 N.E.2d 326(Ill.2004)(735 ILCS 5/2-1401). It should be additionally noted that: "One of the guiding principlesi in administration of section 2-1401 relief is that petition invokes the equitable powers of the Circuit Court to prevent enforcement of a judgment when doing so would be unfair, unjust, or unconscionable".

Lawton,212 Ill.2d 285.288 Ill.Dec.638,818 N.E.2d 326(Ill.2004), citing: Strader v. Chrysler Corp.,9 Ill.App.3d 793,796,293 N.E.2d 149 (1973). The Court then qualified its conclusion by stating that it had in fact found that, petitions filed under the statute (2-1401) may also be used to challenge judgment claims which alleges a defect for legal reasons. Sarkissian v. Chicago Board of Education,201 Ill.2d 95,267 Ill.Dec.58,776 N.E.2d 195(2002);People v. Harvey,196 2d 444,25 Ill.Dec.98 753 N.E.2d 293(2001).

"Doing justice under the law is this Court; is it's highest obligation. Through section (2-1401), the General Assembly has provided us with a versatile and effective means of pursuing justice." People v. Lawton, 818 N.E.2d at 635(2004).

Pursuant to 5/2-1401 subsection (F) prohibits the instant petition from
being recharacterized as a petition for post-conviction relief. There-
fore, the holding in People ex rel.Palmer v. Twomey,53 Ill.2d 479,484
(1973) is inapplicable. The Post-Conviction Hearing Act does not pro-
vide nor create a better corrospondence between the substance of this
pro se petition claim and its underlying legal basis. Castro v. U.S.,
540 U.S. The Act's sole purpose is to provide a Petitioner a vehicle
to assert that their imprisonment is the result of a substantial denial
of their rights and the Constitution of the United States or of the
State of Illinois. The Post-Conviction Hearing Act does not provide a
method of determining mixed questions of the law and Fact. The Act does
not enunciate nor mentions that a void judgment claim is within it's
scope of remedy.

Recharacterizing this (2-1401) petition under section (F) as a post-
conviction to hold it to a more rigorous test and as a means to dismiss
it is a violation of the Illinois Constitution.Article 1.Section 12.
Right to remedy and justice.

Pursuant to 5/2-1401 subsection (F), nothing contained in this sect-
ion affects any existing right to relief from a void order or judgment,
"or to employ any existing method to procure that relief".
Doctrines of (1) untimeliness,(2) waiver,or (3) res judicata do not apply
to the instant claims of this petition.

1.) Untimeliness : the two-year time frame to file a Relief from Judg-
    ment petition does not apply to subsection (F). A void judgment can
    be challenged at any time.

2.) Waiver : the instant petition presents mixed questions of the law
            and fact. It presents evidence and allegations of misrepre-
            sentation of facts. The claims alleging in the instant petit-
    ion could not have been raised on direct due to certain facts being

brought to the Court's attention that's not apart of the record. A mis-
representation of the facts issue is appropriate under a 5/2-1401 (F)
Vehicle and no other collateral procedure. Federal Rules of Civil Pro-
cedure Rule 60(b).

3.) Res judicata is inapplicable in the instant petition. No Court has
ever ruled upon the merits of the issue embodied within this petit-
ion.

## VOID JUDGMENTS

1.) A void judgment may be attacked at any time, either directly or
collaterally, and Courts have an independent duty to vacate void
orders. People v. Wade,116 Ill.2d 1,5,107 Ill.Dec.63,506 N.E.2d
954(1987) and People v. Thompson,209 Ill.2d 19, 25-27 282 Ill.
Dec.183,805 N.E.2d 1200(2004).

2.) A void judgment is from its inception a complete nullity and with-
out legal effect-FORD MOTOR CREDIT Co. v. SPERRY,292 Ill.Dec.893
827 N.E. 422,214 Ill.2d 371.

3.) Section 2-1401 (A) expressly abolishes the old common law writs
and equitable remedies that would have provided the procedural
vehicle for attacking a void judgment at common law. (F) express-
ly permits a party to attack a judgment as void outside the scope
of the statute.

4.) A person may also seek relief beyond section 2-1401's two-year
limitation period where the judgment being challenged is void.
In re Marriage of Steiberg,302 Ill.App.3d 845,856,236 Ill.Dec.21,
706 N.E.2d 985(1998). Harvey Court decided to address the merits.
Motion to vacate a void judgment is not subject to summary dis-

missal. People v. Pearson, 345 Ill.App.3d 191,802 N.E.2d 386,280 Ill
Dec.461.

Petition for Relief from Judgment is a vehicle by which an individual
that has been convicted of a crime, and as a result, imprisoned, mater-
ially may complain about all errors of fact in which need to be correct-
ed, which occured in the prosecution of a cause, which are unknown to
the petitioner and Court at the time of trial, and which, if then known,
would have prevented the judgment .

   The Petitioner herein complains of his <u>trial counsel with-holding</u>
<u>facts and evidence that was extremely important in which would have</u>
changed the outcome of trial. The Petitioner herein was unaware of the
present documentation and evidence submitted within the filing of this
petition until just recently... in which was given to and mailed to the
Petitioner by and through the Law Firm of Jones Day that repersented the
Petitioner on direct appeal.

## STATEMENT OF THE FACTS

In the late evening of January 12,2000, a vehicle driven by Defendant-
Appellant Michael Threlkeld fatally struck the victim Linton Boyd.
Michael Threlkeld, who was twwnty at the time of the incident, was
charged with the murder in the first degree. At trial, Defendant Threl-
keld admitted that he drove the vehicle that struck Linton Boyd, but
contended that it was an accident. After a bench trial, the defendant
was found guilty of first degree murder and sentenced to 35 years in an
Illinois State penitentiary.

   On the evening of January 12,2000, the date of the alleged crime,
Michael Threlkeld arrived home from work at approximately 6:30 p.m.
According to Michael's testimony, corroborated by Terrence Coleman and

and Ahmand Kendell, Michael had a date planned with his long-time girl-
friend Edwina Asha Quansah,(Asha). Michael left his apartment and drove
southbound on Stony Island Avenue in a silver 1998 Jeep Cherokee. Asha's
two-door Red Blazer was double parked, facing the opposite direction on
Stony Island, outside of the Y.M.C.A. where she worked. Linton Boyd was
sitting in the passenger seat of Asha's vehicle. Michael pulled his veh-
icle next to Asha's vehicle such that the driver's side windows were adj-
acent to each other.

Michell Slater and Kyra Ester, were standing at a bus stop across
the street from where Asha was parked. Ms.Slater arrived first at the bus
stop. When she arrived, Asha's red truck was parked across the street.
Approximately fifteen minutes later, Michael's truck approached in the
lane closest to the bus stop. Kyra Ester, arrived at the bus stop just as
Michael's vehicle was pulling up.

Ms.Ester testified that Asha rolled down her window and began talk-
ing, but that the conversation was not loud enough for her to understand
anything that was being said. Ms.Slater also testified that she could not
hear any of the conversation, except that at the end, Michael allegedly
said, "Okay, well, I'll be back". Asha testified that she did not remem-
ber any conversation, but that she put up a finger signaling for Michael
to wait a minute. Michael testified that he interpreted Asha's motion
with her finger to mean "follow her" and so he pulled forward.

After Michael pulled his vehicle forward, Linton Boyd exited Asha's
vehicle on the passenger side and began to open the driver's side door to
his own car which was parked parallel to Asha's vehicle. Asha then pulled
away and stoped up the street at the next stoplight. while or after the

victim Linton Boyd opened his own car's door, the defendant's vehicle
made a U-turn and struck Linton Boyd, killing him. After stricking the
victim, the defendant's vehicle continued forward, paused briefly at the
stoplight next to Asha's vehicle, and then departed the scene. Asha's
vehicle would next be backed up where she quickly went to check on the
victim. By that time several other people had come outside and someone
had called 911. The police arrived on the scene several minutes later.

The defendant testified that after he left the scene, he returned
home to his mother's house, where he had two shots of gin. He then called
Asha's cell phone in order to speak with her, but instead ended up talk-
ing to Officer Gibbs,who was at the scene of the incident. After his con-
versation with Officer Gibbs, the defendant got in his vehicle and drove
south on I-55. Trooper Brian Grey of the Illinois State Police testified
that, while pulled over the defendant's vehicle for driving erratically.
Trooper Brian Grey testified that he detected alcohol on the defendant's
breath . Because the defendant was a minor, Trooper Grey issued him a zero
tolerance citation for underage drinking and took him into custody. Upon
learning that the defendant had been detained in Bloomington, members of
the Chicago Police Department traveled to Bloomington and and transport-
ed the defendant back to Chicago.

## ARGUMENT

The Petitioner contends that his trial counsel with-held vital facts and
evidence that was extremely important in which would have changed the out-
come of trial. And that trial counsel was wholly ineffective for with-
holding such evidence due to fraud and duress. There was ample amount of
evidence adduced during the investigation of this case ... particularly
the (Chicago Police Department Case Supplementiary Report), that clearly
establishes that the petitioner lacked the requisite mental state of in-

tent to be charged or convicted of first-degree murder. The Petitioner assers that despite his duressful testimony in which was formulated and strategized by and through his trial attorney regarding the denial and coercion of him not being intoxicated on January 12th ... that the Petitioner knew not and was highly unaware that he gave a statement or that there was even evidence of him admitting to being intoxicated while driving during the alleged incident of January 12th.

The Petitioner's trial attorney knew of as well as obtained the alleged statement presented herein within trial as well as before trial but with-held it from the Petitioner and never used it. The Chicago Police Case Supplementiary Report is avowedly a reporting document in which involves the questioning of the Petitioner made and conducted by and through a detective by the name of Detective Williams.

Detective Williams was consequently an interviewing Officer in which initiated contact with the Petitioner involving the hit and run inccident of Linton Boyd Jr. on January 12th of the year 2000. The Petitioner herein gave a statement voluntarily disregarding his trial attorneys cocerion at trial stating that : Threlkeld acknowledged his desire to talk and voluntarily stated that "he was drunk yesterday, 13 January 2000 and had an accident." Threlkeld stated he consumed a pint of Seagrams gin and stated he just happen to be driving in the area of 63rd and Stony Island when he saw Quansah in her vehicle. Threlkeld stated he remembered passing Quansah, his ex-girlfriend, and turned around. Threlkeld was driving southbound and Quansah northbound. Threlkeld stated he turned around and loss control, hit a red car in the middle of the block, in front of the Y.M.C.A.

The Petitioner herein asserts as stipulated before as well as earlier on within this petition that despite and disregarding his duressful testimony in which was formulated and strategized by and through his trial attorney regarding the denial and coercion of him not being intoxicated on January 12th of the year 2000 ... that the Petitioner herein was unaware and uninformed that he gave a statement or that there was even evidence of him admitting to being intoxicated while driving during the alleged incident of January 12th.

The Petitioner's trial attorney knew first-hand about the said document in which the Petitioner asserts to detectives during the questioning about him admitting to drinking. And this evidence in which was concealed from both the Petitioner and the Court Judge within the bench trial herein were highly misleading and fraudulent. The Petitioner contends that all evidence pertaining to the Petitioner herein were available to trial counsel. And in comparison to the Petitioner's trial counsel withholding facts and evidence in which would of changed the out-come of trial ... that the Petitioner herein would have prevailed murder charges to a lesser degree of reckless homicide.

The elements in the offence of Reckless Homicide are, "Person commits Reckless Homicide if, while driving a motor vehicle, he or she unintentionally kills an individual, and the acts that cause the death are performed recklessly or as to create likelihood or great bodily harm to some person. And in the instant matter, the Petitioner herein contends that he unintentionally killed Linton Boyd, after driving his vehicle under the influence of alcohol and in a reckless manner which caused the death of Mr.Boyd. And though the consumption of alcohol is not central to the element of Reckless Homicide, being under the influence of alcohol to

the degree that it rendered the Petitioner incapable of safely driving
his vehicle can be considered under the statue, 720 ILCS 5/9-3(a)(c)(2).

   According to the Petitioner's own statement within the Chicago
Police Case Supplementiary Report as well as within the information given
within the transcripts in D-70 - D-72 : the investigating Officer SGT.
Charles Williams testified that at approximately 12:31 in the morning on
January 14th, of 2000, that the Petitioner herein admitted to being under
the influance of alcohol during the alleged incident of January 12th, 2000.

   And yet consequently, there also lies more evidence within the
transcripts in B-3 - B-9 of the Petitioner's trial counsels ineffective-
ness regarding the fraudulent concealment of evidence pretaining to the
Petitioner herein. And that if not for his trial counsel with-holding
facts and key evidence in which would have changed the outcome of trial
... the Petitioner herein would of been charged with Reckless Homicide
instead of 1st degree murder.

(A).
   The Petitioner was apprehended and questioned by interviewing Officer
   SGT. Charles Williams where the Petitioner voluntarily gave a state-
   ment admitting to being intoxicated and hitting the victim while
   driving. CHICAGO POLICE CASE SUPPLEMENTARY REPORT (EXZIBIT 1#)

(B).
   Pages D-70 - D-72 is the testimony of SGT. Charles Williams testif-
   ing to the interviewing of the Petitioner during the questioning of
   the transcripts. (EXZIBIT 2#)

(C).
   Pages B-3 - B-9 is the egregious performance and over-all proof of
   the Petitioner's trial counsels ineffectiveness regarding the said
   issue presented. (EXZIBIT 3#)

Futhermore, Exzibits 1-3 taken seperately paint a vivid picture in retro-
spect to the Petitioner's trial counsels ineffectiveness, where the
statement and voluntiary confession of the Petitioner was concealed pur-
posely by and through his trial counsel due to fraud and duress.

The Petitioner would like to also contend that all evidence,(mainly
Exzibit 1#) regarding his voluntiary statement to interviewing Officer
SGT. Charles Williams was available to counsel before trial as well as
during. And that if not for his counsel with-holding this extremely and
very important evidence, the outcome of the Petitioner's trial would have
been different. The Petitioner also contends that counsel was egregious-
ly ineffective for with-holding exculpatory evidence from the Courts as
well as from the Petitioner that would have proved the Petitioner was
innocent of first-degree murder.

It is reasonable to presume, based upon the evidence available to
trial counsel, that a reduce charge of Reckless Homicide should have been
pursued. And as the Petitioner's acts were performed recklessly, and un-
der the influence of alcohol, the Petitioner is required respectfully to
be sentenced under the statue, 720 ILCS % 5/9-3(a)(c)(2).

Finally, when looking at this case in the light most favorable to
the State, there is no intentional act present. And if not for trial
counsel's incompetent shortcomings, the outcome of trial would have been
different.

CONCLUSION

Trial counsel was highly ineffective for with-holding exculpatory caut-
ious evidence that would have exonerated the Petitioner of first-degree
murder. The Petitioner herein gave a verbal statement voluntiarly admitt-
ing to his guilt of drinking while driving and admitted so to interview-
Officer SGT. Charles Williams. The Petitioner contends that if not for

his trial counsel with-holding vital facts and evidence that was extreme-
ly important in which would have changed the outcome of trial ... the
Petitioner herein would have prevailed murder charges to a lesser degree
of reckless homicide.


WHEREFORE, the Petitioner sets out his prayer for relief asking respect-
fully that his finding of guilt be set aside and granted a new trial.


                        Respectfully Submitted,


                        PETITIONER, PRO SE


                            MICHAEL THRELKELD
                            P.O.BOX 112
                            STATEVILLE C.C.
                            JOLITE IL.
                            60434
                            K-66117

EXZIBIT 1#

CASR201

## CHICAGO POLICE DEPARTMENT
### CASE SUPPLEMENTARY REPORT
1121 South State Street/Chicago, IL 60605

CPD-11.380(Rev.8-96)-C

| Case Report ID: 680935 | RD No.: F024951 | SUP ID: 75492 |
|---|---|---|
| Address of Occurrence: 6335 S STONY ISLAND AV  CHICAGO IL | | |

ROBBINS, Mike. GIBBS contacted ROBBINS, who is a former police officer, at his office and asked if he had a son by the name of THRELKELD, Michael. His response was , " Yes, do you have him in custody." GIBBS stated he didn't have his son in custody but wanted to know if he had spoken with his son. ROBBINS said that he hasn't spoken to his son in years. GIBBS told ROBBINS that the police were looking for his son for a hit and run accident which now has been classified as a homicide. GIBBS asked ROBBINS if he could contact THRELKELD's mother to see if she knows his whereabouts. ROBBINS informed GIBBS that he didn't have the number, so GIBBS called the mother of QUANSAH, Edwina and obtained the telephone number. GIBBS provided the number to ROBBINS, who called the mother, and learned that there was a message left on her answering machine from Michael. The message said that THRELKELD, Michael was under arrest in Bloomington for possession of cannabis. ROBBINS called the Bloomington police department to confirm the message, and was informed that THRELKELD, Michael was in custody for pcs, and a Chicago traffic warrant. ROBBINS immediately contacted area two violent crime and 003 district.

Dets FRAZIER and WILLIAMS were assigned by Sgt Salabura, 1460, of the second watch to drive to Bloomington and extradite THRELKELD back to Chicago. A supplementary case report is forthcoming.

THRELKELD, Michael        Was read his constitutional right from a pre-printed card at 0030 hrs in A2/VC interview room #1. Present were Dets FORD, MORRISON, WILLIAMS and P.O. GIBBS. THRELKELD stated he wanted a lawyer and he declined to answer any questions until his lawyer was present. R/Dets left the interview room.

0031 hrs THRELKELD initiated contact with Det. WILLIAMS stating his desire to talk. R/Dets re-entered the interview room and again advised THRELKELD the R/Dets could/would not ask any questions because he has requested an attorney. THRELKELD advised R/Dets he desired to waive his rights. THRELKELD acknowledged his desire to talk and voluntarily stated in summary not verbatim the following. THRELKELD stated that he was drunk yesterday, 13 Jan 2000, and had an accident. THRELKELD stated he consumed a pint of Seagram's gin and stated he just happened to be driving in the area of 63rd Stony Island when he saw QUANSAH in her vehicle. THRELKELD stated he remembered passing QUANSAH, his ex-girlfriend, and turned around. THRELKELD was driving southbound and QUANSAH was northbound. THRELKELD stated he turned around, loss control, hit a red car in the middle of the block, in front of the YMCA. He turned around to speak to QUANSAH, loss control and got scared.

ASA Allen MURPHY arrived at A2/VC and conducted interviews with ESTER, SLATER and QUANSAH. Written statements were taken from QUANSAH, ESTER . All parties related verbatim the previous oral statements provided to R/Det.

ASA MURPHY provided THRELKELD with his constitutional rights. THRELKELD gave conflicting statements. In his earlier statement THRELKELD stated he just happened to be in the area of 63rd Stony Island when he saw QUANSAH in her vehicle. THRELKELD

CASR201.

**CHICAGO POLICE DEPARTMENT**

**CASE SUPPLEMENTARY REPORT**

1121 South State Street/Chicago, IL 60695

CPD-11.380(Rev.8-96)-C

| Case Report ID: | 680935 | RD No.: | F024951 | SUP ID: 75492 |
|---|---|---|---|---|
| Address of Occurrence: | 6335 S STONY ISLAND AV CHICAGO IL | | | |

then changed his statement and stated he had a date that night with QUANSAH and he was driving around killing time when he saw QUANSAH in her vehicle and she held up one finger . THRELKELD stated QUANSAH's gesture meant one minute. THRELKELD said he then made a U turn and lost control of the car and hit a pedestrian in the street. THRELKELD stated he panicked and continued driving. THRELKELD said he attempted to call QUANSAH on his cell phone but was unable to reach her so he drove home. THRELKELD said he had $650.00 USC on his person so he got his safe which contains 2600.00 USC and drove to Champlain IL to visit a female friend.

When ASA MURPHY attempted to re interview THRELKELD he stated he wouldn't give any more statements until his lawyer is present.

R/Dets requested traffic accident RD #F-025127 be Unfounded; the vehicle in this himicide was used as a weapon. Felony charges of First Degree Murder were approved by ASA MURPHY at 1730 hours, 14 Jan 2000. THRELKELD was processed under CB # 14383704 in district 005. R/Dets request this case be CLEARED CLOSED via ARREST and PROSECUTION.

*** End of Record ***

06-FEB-2000 20:14

Requested by: PC0N974

EXZIBIT 2#

1          MR. ABRAMS:  I will object to that as for

2     purposes even for credibility.  This is not a

3     drug-related case, has nothing to do with it.

4          THE COURT:  No, but it was a felony conviction

5     that does impact on the issue of credibility.

6               It will be received as to that issue and

7     that issue alone.

8                                   (SHORT PAUSE.)

9          MR. ABRAMS:  Real far back to that jury room,

10    maybe 6th floor.

11         THE COURT:  I don't know.

12         MR. ABRAMS:  Takes a long time to call a witness,

13    doesn't it?

14         THE COURT:  Raise your right hand, please.

15                                  (WITNESS SWORN.)

16         THE COURT:  Please be seated.

17              You may inquire.

18              SGT. CHARLES WILLIAMS,

19    called as a witness herein in rebuttal, having been

20    first duly sworn, was examined and testified as

21    follows:

22         D I R E C T   E X A M I N A T I O N

23    BY MS. FORESTER:

24         Q.     Sergeant, you previously testified in this

1    matter, is that correct?

2        A.    That's correct.

3        Q.    Can you state your name for the record.

4        A.    My name is Charles Williams, common

5    spelling, W-I-L-L-I-A-M-S.

6              My star number is 2548.  I'm assigned to

7    the Fifth District.

8        Q.    I'm going to direct again your attention

9    back to January 14th of the year 2000.  Were you

10   involved in the homicide investigation of Linton Boyd

11   which had occurred on January 12th of the year 2000?

12       A.    That's correct.

13       Q.    And at approximately 12:31 in the morning

14   on January 14th of the year 2000, did you interview

15   anybody that you see here in court today?

16       A.    Yes, I did.

17       Q.    Can you point to that person and tell us

18   what he's wearing.

19       A.    He's sitting at the table with the DOC tan

20   uniform on.

21       THE COURT:  Indicating the Defendant, Michael

22   Threlkeld.

23       MS. FORESTER:  Thank you, Judge.

24

1   BY MS. FORESTER:

2       Q.   And did the Defendant tell you he was drunk

3   yesterday, January 13th of the year 2000, and had an

4   accident?

5       A.   That's correct.

6       MR. ABRAMS:  Objection.

7       THE COURT:  Basis?

8       MR. ABRAMS:  Compound question and not rebuttal.

9       THE COURT:  Overruled.

10          Go ahead.

11      MS. FORESTER:  You can answer, Sergeant.

12      THE WITNESS:  A.   Yes, he did.

13  BY MS. FORESTER:

14      Q.   Did he tell you that he had consumed a pint

15  of Seagram's gin and stated he just happened to be

16  driving in the area of 67th and Stony Island when he

17  saw Asha in her vehicle?

18      A.   That's correct.

19      MS. FORESTER:  I have nothing further.

20      THE COURT:  Cross.

21          C R O S S - E X A M I N A T I O N

22  BY MR. ABRAMS:

23      Q.   Did he say he had an accident?

24      A.   Yes, he did.

EXZIBIT 3#

1      THE CLERK:  Michael Threlkeld.

2      THE COURT:  This is a bench trial that was

3  commenced and continued.  All parties are present.

4      MR. ABRAMS: About 15 minutes ago, I was tendered a

5  new police report that I have never seen before. The police

6  report is dated January 13, 2000.  It's apparently a

7  supplement or typed report from the same officer who has

8  prepared previous reports in this matter and I understand is

9  going to be a witness in this case.

10      What is interesting about this, Judge, is when we

11  had prepared a motion, the motion was prepared and a hearing

12  was presented and our entire defense in this matter was laid

13  out shortly thereafter.  The state said by the way here is

14  additional discovery that we thought you had. And I told the

15  Court I was surprised by that discovery that after we had

16  presented our defense, it put us in a negative position on

17  that and I was given additional time to prepare.

18      THE COURT: I remember that.

19      ✱✱ MR. ABRAMS: I tendered cases to the state and to

20  the Court that would show the effects of rulings dealing

21  with alcohol.  Today I received a report that in effect

22  basically you can take these cases and pitch them because we

23  have a new report, an unsigned report that was tendered to

24  me.  I believe this is what the officer is going to testify

33

1    about.  I would believe right now that is a surprise

2    coincidence. I don't know what's going on here. I don't get

3    these reports.

4              THE COURT: What are you asking me for?

5              MR. ABRAMS: The sanction that this officer not be

6    allowed to testify.  The report he tendered is a report I

7    received the first time.

8              MS. FORESTER:  Trooper Brian Gray who is employed

9    by the Illinois State Police, he tendered notes pursuant to

10   my subpoena which I issued back in August.  And every report

11   I received up until today's date I tendered to Mr. Abrams.

12   It was this morning that I received this report from Mr.

13   Gray.  I have had with the trooper numerous conversations

14   where there was no mention of essentially that this report

15   was prepared.  Based on handwritten notes that I did tender

16   to defense counsel, this is a summary of notes previously

17   tendered.  It was something I received this morning. The

18   first time I saw Mr. Abrams, I tendered it.

19             THE COURT: Is there something in the police reports

20   that were tendered today that were received by the state for

21   the first time today and tendered to defense for the first

22   time that changes the position that something might have

23   been done differently had we known about this in advance?

24             MS. FORESTER:  No.

1      MR. ABRAMS: Based on my review, yes. Based on cases
2  that the state had yesterday and what I tendered to the
3  Court, contents would say the cases that you tendered are
4  now meaningless because there is some stuff in here that did
5  not appear in any previous reports from this officer or any
6  other state police.  And it wasn't until--

7      THE COURT:  What might you have done differently?
8      MR. ABRAMS: Not what I would have done differently.
9  I wouldn't have done anything differently about it.  This
10  report catches me by surprise.  I would have gotten
11  different cases.

12      THE COURT: Different cases ?
13      MR. ABRAMS:  I would have looked for different ways
14  of researching it based on the evidence that is now in here.

15      THE COURT: I will give you time to do that.  If you
16  are saying that you want time to do this, I will give you
17  time. If that's all that's going to change, you can have
18  time.

19      MR. ABRAMS: I don't know that it's going to
20  affect --I did extensive research in getting to the cases
21  that I did.

22      THE COURT:  If now you think there is new evidence
23  that you are being made aware of for the first time today --
24  First of all, I will make a finding.  This is a case that

1    involves several different police agencies, particularly

2    police officers from another county, different

3    jurisdictions. And I know that the prosecutors in this case

4    have used good faith in obtaining all documents and

5    tendering all the relevant documents. That they have in

6    their continuing obligation to have the discovery ongoing.

7    And I believe the prosecutor when she tells me she learned

8    about this the first time today, especially in light of the

9    fact it was a police officer in Bloomington that she did not

10   have access to until she saw him today. That being said, I

11   find no prosecutorial misconduct at all.  I need to know

12   with certainty what remedy you are asking for.

13          MR. ABRAMS:   This officer prepared the report on

14   January 13, 2000.

15          THE COURT:   What remedy are you asking for?

16          MR. ABRAMS:   I ask that he not be allowed to

17   testify.

18          THE COURT:I will not grant that remedy.

19          MR. ABRAMS:   I ask that he not be allowed to

20   testify to the contents of this report dated --

21          THE COURT: What would you have done differently now

22   that you have read the report?  What is the bomb shell that

23   would cause you to do something differently?  What would you

24   have done differently?  Did something happen yesterday that

1    would not have happened had you had this report before?

2            MR. ABRAMS:  Not yesterday.

3            THE COURT: Is there something you intend to do that

4    today that's different?  Would that have caused you to ask

5    for a jury instead of a bench?

6            MR. ABRAMS:  I don't think so.

7            THE COURT:  What would you have done differently?

8    What is the prejudice that you are suffering because the

9    prosecutor and you got this today instead of pre-trial?

10   What is the prejudice you are suffering?

11           MR. ABRAMS:  Judge, the cases that I researched had

12   to do with intoxication, under the influence. So that's what

13   I tendered to the state, that's what I tendered the Court.

14   It's been our allegation from day one that my client was not

15   under the influence. This report contrary to earlier reports

16   now has him heavily drinking.

17           MS. FORESTER: That's not true.

18           THE COURT: What would you have done differently?

19   What's the prejudice if you had had this report 6 months ago

20   instead of today?  What difference would it make at this

21   trial?

22           MR. ABRAMS:  I would have researched the cases

23   differently.

24           THE COURT: If that's the remedy, I will give you

B7

1   time.  If that's all you want, that's no problem.  I will

2   gladly give you additional time to do your research.

3          MR. ABRAMS: I may need that.

4          THE COURT: Any other remedy you are asking me for?

5          MR. ABRAMS:  I'd ask for a motion that they not be

6   allowed to testify to this recently submitted unsigned

7   report.

8          THE COURT:  Why?

9          MR. ABRAMS:  We have his handwritten report that

10  came in timely. How come this didn't come then? They're

11  dated the same time.

12         THE COURT: You can ask him about it.  Have you

13  talked to him about it?

14         MR. ABRAMS:  No.

15         THE COURT:  Why don't you ask him about it?  You

16  can ask him right now before he gets to the witness stand.

17  Do you want to do that?

18         MR. ABRAMS:  I wouldn't mind it.

19         THE COURT:  You are not asking for a mistrial?

20         MR. ABRAMS:  Not at this point.

21         THE COURT:  You don't want a mistrial?  That's not

22  what you want?  Time I can give you if you think that this

23  might change how you approach the case law.

24         MR. ABRAMS: I'd have to discuss that with my

1  client.

2      THE COURT: That I can afford you.  Why don't you

3  talk to the policeman and see if the talk might be helpful?

4  Pass it.

5      (Whereupon the above-entitled cause is passed)

6      THE CLERK:  Michael Threlkeld.

7      THE COURT:  Mr. Threlkeld, you can have a seat with

8  your lawyer. Are you ready?

9      MR. ABRAMS: About that matter that we broke for, I

10 have talked to my client.  He does not wish at this point

11 for a motion for mistrial.  In addition, I have had an

12 opportunity to speak to the state trooper who I believe is

13 going to testify. And while while I'm not totally satisfied,

14 I'm satisfied enough to proceed.  At the conclusion of his

15 testimony, I'll let the Court know if I need additional

16 time.

17     THE COURT: You want time because you are taken by

18 surprise, you will be granted time. There is no request for

19 mistrial.  You may want additional time.  I will give it to

20 you. Call your witness please.

21     (Witness sworn)

22          K Y R A   E S T E R

23   Called as a witness on behalf of the People of the Stat

24 of Illinois, being first duly sworn, was examined and testifi

89

STATE OF ILLINOIS    )
                     )
COUNTY OF COOK       )        SS

## AFFIDAVIT

I Michael Threlkeld, being first and duly sworn on oath, desposes that the facts stated within this 2-1401 petition are true and correct to the best of his knowledge and belief.

*[signature]*

MICHAEL    THRELKELD

---

NOTARY

State of _Illinois_ County of _Will_
Signed before me on this _26th_ day
of _February 2008_ by _____
Notary Public _[signature]_

> OFFICIAL SEAL
> PHYLLIS BAKER
> Notary Public - State of Illinois
> My Commission Expires Feb 07, 2011

STATE OF ILLINOIS   )
                       )     SS
COUNTY OF COOK     )


## AFFIDAVIT

        I Michael Threlkeld, being first and duly sworn
on oath, that the petition herein has been served to :

(1.)

    Honorable Lisa Madigan,Attorney General,Criminal Appeals Division
    100 Weat Randolph street, 12th floor, Chicago Ill.60601.

(2.)

    Richard A. Devine,State's Attorney,300 Daley Center, Chicago Ill.
    60602.

(3.)

    Office of the Circuit Court Clerk of Cook County, 2650 s. Cali-
    fornia, Chicago Ill, 60608, 5th floor.


MICHAEL    THRELKELD

STATE OF ILLINOIS
COUNTY OF Will
   SIGNED BEFORE ME ON 26th DAY OF JANUARY 2008
BY Michael Threlkeld..

NOTARY

OFFICIAL SEAL
SHERWIN K. MILES
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-20-2008

IN THE CIRCUIT COURT OF THE FIRST

JUDICIAL CIRCUIT, COOK COUNTY, ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
|     Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 4537. |
| | ) | |
| | ) | Honorable |
| MICHAEL THRELKELD, | ) | James B.Linn, |
| | ) | Judge Presiding. |
|     Petitioner-Appellant | ) | |

MOTION FOR APPOINTMENT OF COUNSEL

The undersigned Petitioner <u>Michael Threlkeld</u> respectfully moves the
Court, pursuant to 735 5/2-1401 (F), to appoint counsel for him in
this case.

1.) The Petitioner herein has been incarcerated continuously since <u>Jan-
uary 12th of 2000</u>, and am presently held in custody and residing at
the <u>Stateville Correctional Center</u> in <u>Joliet</u> Illinois, County of <u>Will</u>.

2.) I am without sufficient income or assets with which to pay for the
cost of these proceedings or to employ an attorney to represent me in
this matter.

3.) I am without the service of counsel to represent me in this matter
and I wish the Court to appoint counsel to represent me in this matter.

4.) I have a constitutional right to access to the Courts, and without
the assistance of counsel, my access to the Courts will be inadequate,
ineffective and meaningless.

5.) My claim in this matter is not frivolous or malicious, but is color-
able and meritorious.

WHEREFORE, the Petitioner herein <u>Michael Threlkeld</u> respectfully request that counsel be appointed to represent him in this matter.

MICHAEL          THRELKELD
STATEVILLE C.C.
P.O.BOX 112
JOLIET Illinois
60434
K-66117

## VERIFICATION OF CERTIFICATION

I,Michael Threlkeld the undersigned,certify and state that :

1.) Iam the Petitioner in the above captioned legal matter;

2.) I have read the foregoing application and have knowledge of its contents and ;

3.) Under penalties as provided by law pursuant to sec. 1-109 of the Code of Civil Procedure, I certify that the statements set forth in the foregoing motion and this affidavit are true and correct to his knowledge except as to matters therein stated to be on information and belief, and as to such matters I believe the same to be true.

## ORDER

The foregoing application is :

_____ Granted

_____ Denied

_____
Judge,Circuit Court

IN THE CIRCUIT COURT OF THE FIRST

JUDICIAL CIRCUIT, COOK COUNTY, ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Respondent-Appellee, ) | |
| ) | No. 00 CR 4537. |
| -vs- ) | |
| ) | Honorable |
| ) | James B.Linn. |
| MICHAEL THRELKELD, ) | Judge Presiding. |
| Petitioner-Appellant, ) | |

APPLICATION TO DEFEND AS A POOR PERSON

Applicant <u>Michael Threlkeld</u> respectfully requests the Court, pursuant to Illinois Revised Statutes, ch. 110,sec, 5-105 (after 1992 see 735 ILCS 5/5-105) and rule 298 of the Illinois Supreme Court, to grant him leave to defend as a poor person: in support applicant states that the following facts are true in substance and in fact :

1.) Iam the Petitioner in the above captioned legal proceeding.

2.) Iam a poor person and unable to defend this action and unable to pay the costs,fees and expenses of this action.

3.) Iam not currently employed due to my imprisonment at Stateville Correctional Center but I receive a State stipend of 10.00 per month.

4.) ■■ My total income for the proceeding year was 238.00.

5.) The sources and amount of income expected by me hereafter is not known.

6.) The nature and current value of any property,real or personal, owned by me is my telivision, radio, and typewriter comes to the value of about 450.00.

7.) No applications for leave to defend as a poor person were filed by me or my behalf during the proceeding year.

8.) I believe in good faith that I have a meritorious claim.

MICHAEL    THRELKELD
P.O.BOX 112
STATEVILLE C.C.
JOLIET ILLINOIS
60434
K-66117

VERIFICATION OF CERTIFICATION

I,Michael Threlkeld the undersigned,certify and state that :

1.) Iam the Petitioner in the above captioned legal matter;

2.) I have read the foregoing application and have knowledge of its contents
    and ;

3.) Under penalties as provided by law pursuant to sec. 1-109 of the Code
    of Civil Procedure, I certify that the statements set forth in the fore-
    going motion and this affidavit are true and correct except as to matters
    therein stated to be on information and belief, and as to such matters
    I believe the same to be true.

ORDER


The foregoing application is:

_____ Granted

_____ Denied


                        _____
                        Judge, Circuit Court