IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. <br> MICHAEL THRELKELD <br><br> Petitioner <br><br> v. <br><br> DAVE REDNOUR, Warden[1] <br><br> Respondent. | Case No. 08 C 1479 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

In January 2000, Michael Threlkeld struck and killed Linton Boyd with his car. Threlkeld was charged with first-degree murder. During his bench trial, Threlkeld admitted that he had struck Boyd, but contended that the incident was an accident. The state trial court nonetheless convicted Threlkeld of first-degree murder. Threlkeld exhausted his rights to a direct appeal and post-conviction relief in the state court and now seeks a writ of *habeas corpus* pursuant to 22 U.S.C. § 2254. For the reasons stated herein, the Court DENIES Threlkeld's petition.

I. Factual Background[2]

---

[1] Dave Rednour is the Warden at the Menard Correctional Center, where Threlkeld is incarcerated, and is thus the proper respondent in this *habeas* action. *See* Rule 2(a) of the Rules Governing *Habeas Corpus* cases under 28 U.S.C. § 2254. The Court hereby substitutes Dave Rednour as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] The state court's factual findings are "presumed to be correct" on federal *habeas corpus* review, and this presumption may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981). Unless otherwise indicated, the factual background is taken from the state appellate court's denial of Threlkeld's direct appeal.

1

On January 12, 2000, Edwina Asha Quansah was working at a YMCA as a membership representative and switchboard operator. Linton Boyd worked at the same YMCA as the director of aquatics. Around 9:20 p.m., Quansah and Boyd left work and went to Quansah's car, which was parked in the rear of the building. Quansah then drove Boyd to the front of the building and double parked next to his car on the street.

While Quansah and Boyd talked in her car, Threlkeld, driving the opposite direction as Quansah was parked, pulled up next to her car. Quansah testified at trial that Threlkeld had been calling her at work asking her to go out, but that she kept saying no. In addition, Quansah testified that she and Threlkeld had previously dated, but that their relationship had ended in September 1999, largely because of a series of violent and threatening events.[3] Threlkeld attempted to speak with Quansah, but she testified that she did not recall what he said.

After the brief conversation, Threlkeld departed. Boyd then exited Quansah's car, and she drove away. In her rearview mirror, Quansah noticed Threlkeld drive a little ways, make a u-turn, and then strike Boyd with his car as Boyd attempted to get into his own car. Threlkeld, now driving the same direction as Quansah, caught up to her at a stoplight, stared at her and then drove through a red light. Quansah returned to check on Boyd. Quansah later received two voice mails from Threlkeld about the incident. According to Quansah, in the first voice mail, Threlkeld made no mention of the incident as an accident. In the second, made after Threlkeld had learned that Boyd had died, he referred to the incident as an accident.

---

[3] These events form the basis of one of Threlkeld's arguments in his petition. In short, Quansah testified to a series of prior bad acts where Threlkeld damaged her property, threatened her with a baseball bat, drove his vehicle directly at her vehicle in an alley, and pointed a gun at her demanding the return of property.

2

Around 2:30 a.m. on January 13, roughly five hours after Threlkeld struck Boyd, Officer Brian Gray pulled Threlkeld over. Threlkeld provided Gray with a false name, Kevin Williams, but did not produce a license or proof of insurance. Gray smelled alcohol on Threlkeld's breath, and after inquiring about it, Threlkeld admitted that he had drank a pint of gin. When Gray noticed the damage to the vehicle, Threlkeld lied and informed Gray that his uncle had hit something a month earlier. Threlkeld also lied about his address. At 4:15 a.m., Gray administered a breathalyzer test, which revealed a blood alcohol content of .006.[4] Because Threlkeld had told Gray he was not 21, Gray arrested Threlkeld under a zero tolerance policy for under age drinkers and drivers. Gray searched Threlkeld's vehicle and discovered a safe containing $2,600. At 6:00 a.m. Sergeant Brendon Heffner with the Illinois State Police interviewed Threlkeld, who briefly continued to lie about his identity. Ultimately, the police connected Threlkeld to Linton's death and he was charged with murder.

In addition to Quansah and the Illinois state police, two witnesses, who were in the vicinity waiting for a bus when Threlkeld hit Boyd, testified for the state. The first, Michelle Slater, testified that she heard Quansah and Threlkeld have "a couple of words" and heard Threlkeld say just before he drove off that he would be back. Slater testified that Threlkeld seemed upset. She witnessed Threlkeld make a u-turn, drive straight without swerving, and strike Boyd at full speed. Slater testified that Threlkeld was driving "really fast" at the time and never slowed down, stopped, or came back to the scene of the incident. The second witness, Kyra Ester, testified that Quansah and Threlkeld had a brief conversation but that she could not hear what was said. Ester further testified

---

[4] During trial, Gray testified that he had written .000 and later amended this to .002.

3

that she witnessed Threlkeld turn around, accelerate, and hit Boyd's car and then Boyd. Ester testified that Threlkeld hit Boyd with sufficient force that he flew into the air after being struck.

Finally, the state presented some forensic evidence. Dr. Rexene Worrell testified that Boyd's body was covered with multiple abrasions and lacerations, Boyd's cervical spine (neck) was fractured in multiple places, Boyd's head was dislocated, and that blood pooled internally at multiple locations. Forensic evidence revealed that Boyd traveled 78 feet from the point where the initial impact occurred.

During his defense, Threlkeld called witnesses who testified to his poor driving skills and the strength of his relationship with Quansah. For example, Terrence Colemen, one of Threlkeld's roommates, testified that Threlkeld and Quansah had broken up four or five times, but that neither sought to date anyone else. Ahmand Kendall, another of Threlkeld's roommates, testified that Threlkeld and Quansah had an on and off relationship but that Threlkeld never harmed her. Kendall further testified that he frequently told Threlkeld to drive more safely and to slow down. Jasmine Carter, one of Threlkeld's cousins, testified that although Threlkeld and Quansah had an up and down relationship, they always reunited after breaking up. Carter testified that she had never observed Threlkeld be violent. Carter, like Kendall, attested to Threlkeld's poor driving skills, specifically mentioning his inability to control a car.

Threlkeld also testified in his own defense, asserting that the incident was an accident. He admitted to receiving numerous tickets and being involved in multiple accidents. Regarding the events leading up to Boyd's death, Threlkeld testified that when he pulled up next to Quansah, he could not hear what she said but believed that she wanted him to follow her. Threlkeld testified that he then made a u-turn to follow here, accelerated out of the u-turn, and did not see Boyd until it was

too late. Threlkeld testified that he then became afraid and had a few drinks. After learning that Boyd was dead, he got his safe and left town. He denied telling the officer who stopped him that he had drank a pint of gin.

The state trial court convicted Threlkeld on one count of first degree murder and gave him a thirty-five year sentence. Threlkeld moved for a new trial, and the state trial court indicated that it considered lesser offenses but concluded the evidence proved murder. Threlkeld appealed his conviction, raising three issues: (1) that the evidence was insufficient to support a guilty verdict; (2) that his rights were violated by the admission of testimony regarding his prior bad acts; and (3) that counsel had been ineffective in failing to call a particular defense witness. The state appellate court rejected Threlkeld's appeal, and the Illinois Supreme Court denied leave to appeal.

Threlkeld later filed a post-conviction petition in the state court raising two issues: (1) that counsel was ineffective in failing to pursue a reckless homicide conviction based on Threlkeld's intoxication; and (2) that trial counsel was ineffective in failing to call witnesses to support an intoxication defense. In support of the petition, Threlkeld attached police reports and affidavits reflecting his history of driving while intoxicated. The state court summarily dismissed Threlkeld's post-conviction petition as frivolous. The state appellate court denied Threlkeld's appeal of the dismissal of his post-conviction petition, and the Illinois Supreme Court denied leave to appeal.

Threlkeld then filed this *habeas corpus* petition, raising four arguments. First, Threlkeld argues that insufficient evidence supports his conviction. Second, Threlkeld argues that the state court erred in admitting and considering his prior bad acts. Third, Threlkeld argues that his trial counsel was ineffective in failing to investigate and pursue a voluntary intoxication defense. Fourth, Threlkeld argues that his trial counsel was ineffective in failing to call a potential character witness.

5

## II. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a federal court cannot grant *habeas corpus* relief on a claim adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 22 U.S.C. § 2254(d); *McCarthy v. Pollard*, 656 F.3d 478, 483 (7th Cir. 2011). Under the "contrary to" clause, a federal court may issue a writ of *habeas corpus* if the state court applies a rule of law that is different from the governing law as set forth by the Supreme Court or decides a case differently that the Supreme Court has on a materially indistinguishable set of facts. *McCarthy*, 656 F.3d at 483. Under the "unreasonable application" clause, *habeas* relief is appropriate if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the case. *Id.* The state court's application of the principle must be more than simply wrong. *Id.* Rather, under this standard, the state court's application must be objectively unreasonable. *Id.* To determine whether a state court's decision is unreasonable, a court first determines what arguments or theories could support a state court's decision and then asks whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the Supreme Court precedent. *Cullen v. Pinholster*, — U.S. —, —, 131 S.Ct. 1388, 1402, 179 L.Ed.2d 557 (2011).

## III. Analysis

### A. *Sufficiency of the Evidence*

In *Jackson v. Virginia*, the Supreme Court set the standard to evaluate claims that a

conviction is unconstitutional because insufficient evidence supports it. 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed. 560 (1979). Under that standard, a conviction violates the constitution if no rational trier of fact could have found guilt beyond a reasonable doubt based upon the evidence adduced at trial. *Id.* Although the state court did not cite directly to *Jackson*, it correctly articulated the standard. Thus, its decision is not contrary to Supreme Court precedent.

Threlkeld's argument that insufficient evidence supports his conviction entirely lacks merit. Threlkeld argues that the trial court lacked sufficient evidence to demonstrate Threlkeld's intent, a necessary element of first degree murder. In support, Threlkeld complains that the evidence was almost entirely circumstantial. But evidence of intent is "almost always demonstrated by circumstantial evidence." *Eckstein v. Kingston*, 460 F.3d 844, 850 (7th Cir. 2006); *see also People v. Greer*, 336 Ill. App. 3d 965, 975-76, 785 N.E.2d 181 (2003). *Jackson* makes clear that the trier of fact bears the responsibility to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the basic facts to ultimate facts. 443 U.S. at 319. The fact that the state trial court drew inferences regarding Threlkeld's intent from circumstantial evidence does not mean that insufficient evidence supports his conviction.

Instead, a mountain of evidence supports Threlkeld's conviction. Even discarding the evidence that Threlkeld argues should not have been admitted or was misinterpreted,[5] more than sufficient evidence remains to support his conviction. Among other things, the evidence contained testimony from two neutral eye witnesses from which a reasonable trier of fact could infer that Threlkeld intended to murder Boyd. The first eye witness, Michelle Slater, testified that Threlkeld

---

[5] Threlkeld argues that his history of abusing Quansah should not have been admitted. He also argues the state court's misinterpreted the testimony concerning Threlkeld seeing her in the presence of another man for the first time.

7

and Quansah exchanged words before the accident and that Threlkeld told her that he would be back. More importantly, Slater testified that Threlkeld seemed upset after the conversation and that he drove really fast, without swerving. The second eye witness, Kyra Ester, testified similarly. Ester testified that Threlkeld accelerated coming out of the u-turn, striking Boyd with such force that his body flew in the air. A rational trier of fact could more than reasonably draw the inference that Threlkeld intended to murder Boyd simply from the testimony of two impartial witnesses who observed him drive straight at Boyd at a high rate of speed without swerving, braking, or in any way attempting to avoid the collision.

Other evidence supports Threlkeld's intent to kill Boyd. The forensic evidence buttresses the eye witnesses' testimony that Threlkeld struck Boyd while traveling at a high rate of speed. Boyd's body traveled 78 feet and was lacerated, torn, and mangled in multiple places. A reasonable trier of fact could conclude from those facts that Threlkeld intended to strike Boyd. Further, immediately after the accident, Threlkeld fled the scene. Shortly thereafter, he learned that Boyd had been killed and he retrieved a safe and left the Chicago area. When he was stopped by a state trooper who knew nothing about the accident, Threlkeld lied about his identity, address, and damage to his vehicle. A jury (or other factfinder) is permitted to consider a suspect's flight as evidence of his consciousness of guilt and thus of guilt itself. *United States v. Morris*, 576 F.3d 661, 668 (7th Cir. 2009); *Allen v. Chandler*, 555 F.3d 596, 599 (7th Cir. 2009).

Threlkeld argues that the eyewitness explanations of the evidence are "open to more interpretation and cannot form the basis for his conviction." That is not a correct statement of the law. The law does not require the government to disprove every possible hypothesis of innocence in order to sustain a conviction. *United States v. Humphries*, 468 F.3d 1051, 1054 (7th Cir. 2006).

As noted earlier, the trier of fact must resolve conflicts in the testimony, weigh the evidence, and draw inferences from that evidence. *Jackson*, 443 U.S. at 319. Even though Threlkeld provided an alternative inference that could be drawn from the witnesses statements — that he was a poor driver and the fact that he accelerated out of the u-turn demonstrates only his poor driving skills and not any intent to murder Boyd — the fact that more than one reasonable inference can be drawn from the set of facts before the state trial court does not demonstrate that insufficient evidence supports a conviction. *Humphries*, 468 F.3d at 1054. Indeed, the fact that multiple reasonable inferences can be drawn from the set of facts before the state court dooms his sufficiency of the evidence claim. Threlkeld must show that the inferences drawn by the state court are not reasonable to demonstrate that it unreasonably applied *Jackson*. He has not.

### B. Prior Bad Acts

Ordinarily, an argument that the state court violated a state evidentiary rule is not cognizable in a petition for a writ of *habeas corpus*. *Estelle v. McGuire*, 500 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed. 385 (1991). Rather, where the petitioner argues that the state court failed to limit the prosecution's evidence, the "only constitutional principle to which the [petitioner] can appeal is a catch-all sense of due process." *Watkins v. Meloy*, 96 F.3d 4, 6-7 (7th Cir. 1996); *see also Estelle*, 500 U.S. at 68. In reviewing a state court's ruling based on a state rule of evidence, a federal court does not weigh the correctness of the ruling, but asks whether the state-court ruling deprived him of a fundamentally fair trial. *Brown v. Watters*, 599 F.3d 602, 616 (7th Cir. 2010); *Koo v. McBride*, 124 F.3d 869, 874 (7th Cir. 1997). Thus, something more than a garden-variety violation of a Fed. R. Evid. 404(b) standard must be shown to state a constitutional violation. *Watkins*, 95 F.3d at 7.

In this case, Threlkeld invokes his due process rights. However, he points to no Supreme

9

Court precedent that holds that the admission of prior bad acts evidence amounts to a due process violation. Threlkeld points only to *Michelson v. United States*, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948). *Michelson* does not stand for the proposition that the admission of improper character or propensity evidence violates due process. Rather, it stands only for the principle that such evidence should not be admitted. *Id.* Without any Supreme Court precedent, Threlkeld raises only a non-cognizable claim that the state court erred in admitting propensity evidence and the Court cannot grant him relief on this claim.

Even if Threlkeld raised a cognizable *habeas* claim or pointed to Supreme Court precedent to support his claim, it is not even clear that the state court erred in admitting the challenged evidence. *Anderson v. Stearnes*, 243 F.3d 1049, 1053 (7th Cir. 2001) (noting that if there were no error in admitting evidence there can be no habeas claim). Evidence of prior bad acts is not admissible to demonstrate that a person had a propensity to commit the crime. The state appellate court recognized this evidentiary principle. It noted, however, that prior bad acts evidence is admissible to demonstrate a defendant's motive for committing a crime, the absence of mistake, and a defendant's intent to commit a crime. *People v. Illgen*, 145 Ill.2d 353, 583 N.E.2d 515 (1991) (collecting cases). Here, the state offered Threlkeld's history of violent and abusive behavior directed at Quansah to demonstrate that he was motivated by jealousy at seeing Quansah with another man and intended to use violence to control her. *Id.* (holding that a defendant's prior history of violence towards a victim is admissible to prove motive and intent).

C. *Ineffective Assistance of Counsel*

Threlkeld first argues that his trial counsel was ineffective in failing to investigate and pursue an intoxication defense. The state court rejected his argument, noting that trial counsel made a

legitimate strategic decision to pursue an all-or-nothing defense of accident rather than pursue a lesser defense of reckless homicide due to an affirmative defense of voluntary intoxication. The state court held that little evidence supported Threlkeld's voluntary intoxication defense, noting that even the affidavit submitted by Threlkeld after the trial did not state that he was intoxicated. The state court observed that, instead, Threlkeld's affidavit focused on trial counsel explanation why he should not pursue the intoxication defense. Moreover, the state court observed that Threlkeld's trial testimony directly contradicts any argument that he was intoxicated. Finally, the state court observed that none of the affidavits from potential witnesses supports a claim that Threlkeld was intoxicated at the time he struck Boyd, but instead support only a general claim that he sometimes drank when he drove. Consequently, the state court held that any intoxication defense would have been speculative and that counsel could not have been ineffective in failing to present it.

The Supreme Court set forth the standard for ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's allegedly deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 688, 694. The state court recognized the standard set forth in *Strickland*, and thus, Threlkeld can prevail on his § 2254 claim only if the state court's application of *Strickland* was unreasonable. *Knowles v. Mirzayance*, 556 U.S. 111, —, 129 S.Ct. 1411, 1420, 173 L.Ed. 2d 251 (2009).

In arguing that the state court unreasonably applied *Strickland*, Threlkeld focuses on his trial counsel's advice regarding the intoxication offense. Threlkeld argues that trial counsel actually

misapprehended the law on voluntary intoxication. Threlkeld suggests that because trial counsel advised him that evidence that he drank on the night of the accident could be an aggravating factor. Instead, Threlkeld argues that evidence that he drank on the night of the accident could only have been a mitigating factor. However, it is clear from the state court record that the voluntary intoxication defense completely lacked merit. Where a proposed defense lacks merit, counsel cannot have been ineffective for failing to raise it. *Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010).

At the time of the incident, Illinois law provided that a person who is intoxicated is criminally responsible for his conduct unless his intoxication is "so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense." 720 ILCS 5/6-3; *People v. Baczkowski*, 180 Ill. App. 3d 17, 535 N.E.2d 484 (1989). To establish the defense a defendant need not be so drunk as to have no recall of the facts of the event whatsoever, *People v. Wright*, 111 Ill.2d 18, 22-23, 488 N.E.2d 973 (1986), but he must be so drunk that his intoxication suspended all reason, *People v. Winchel*, 159 Ill. App. 3d 892, 918, 512 N.E.2d 1298 (1987). Threlkeld must have demonstrated more than he was simply drunk for his intoxication to have provided a defense. *Winchel*, 158 Ill. App. 3d at 918.

In this case, the evidence at trial demonstrated that Threlkeld did not meet the standard for a voluntary intoxication defense. Most importantly, he testified on his own behalf that he was not drunk. While Threlkeld argues that he did so only on the advice of his attorney, the fact remains that he testified under oath. A collateral attack based on the proposition that his own testimony "was a pack of lies" lacks merit. *Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005) (noting that the legal system has many remedies to deal with problems — refusing to testify, asking for new counsel — and that perjury is not one of them).

Even putting aside Threlkeld's testimony that he was not drunk, other evidence undercuts the proposed voluntary intoxication defense. The witnesses testified that he was not swerving, which suggests that he was not so intoxicated that he lacked control over his vehicle. The officer who arrested him several hours later did not observe extreme intoxication, recording a blood alcohol content of .006 or .002. And immediately after the accident, Threlkeld was sufficiently aware of his culpability that he went to his home, checked on the status of the victim, obtained personal possession and money, and fled the scene. Evidence that a defendant acts with purpose or rationality or remember the events with clarity makes the defense unavailable. *Winchel*, 159 Ill. App. 3d at 918. Hatching an escape plan demonstrates purpose and rationality, and Threlkeld's testimony concerning the incident reveals that he remembered the events of that evening and acted with a purposeful plan to escape criminal liability.

The state court's determination that counsel was not ineffective in choosing not to pursue a defense based on speculative evidence, particularly given that Threlkeld's own testimony undercut that defense, was not an unreasonable application of *Strickland*.

Finally, Threlkeld argues that counsel was ineffective in failing to call Nikki Wittingham, Quansah's mother, to testify as a character witness for him. Threlkeld's argument requires little discussion. According to Threlkeld, Wittingham would have testified that she did not believe he had the character to admit murder. Wittingham approached counsel after the trial court found Threlkeld guilty. Counsel prepared an affidavit for Wittingham to sign and presented it to the trial court, asking it to reconsider its verdict. The trial court declined to do so, but did consider Wittingham's affidavit as mitigating evidence.

Threlkeld suggests that he need demonstrate only that Wittingham's testimony was

admissible, relevant, and exculpatory to demonstrate that the state court made an unreasonable application of *Strickland*. Threlkeld, however, misstates the law. In order to demonstrate that counsel's error prejudiced him, Threlkeld had to demonstrate that but for counsel's deficient performance there was a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. 694. On collateral review, Threlkeld has to demonstrate that the state court's application of *Strickland* fell outside the bounds of objective reasonableness. *Goudy v. Basinger*, 604 F.3d 394, 409 (7th Cir. 2010). The state appellate court observed both that Wittingham did not come forward until after Threlkeld's trial and that the state trial court declined to reconsider the verdict when presented with Wittingham's proposed testimony, and therefore counsel's failure to call Wittingham was not prejudicial.[6] Threlkeld makes absolutely no argument that the state appellate court's application of *Strickland* fell outside the bounds of reasonableness.

For the foregoing reasons, the Court DENIES Threlkeld's petition for a writ of *habeas corpus*.

D.  *Evidentiary Hearing and Certificate of Appealability*

Threlkeld asks, in a single, sentence, for an evidentiary hearing. Only evidence that was part of the record may be considered by a court during § 2254(d)(1) review. *Cullen*, — U.S. at —, 131 S.Ct. at 1399-1402. Only if the Court determined that the record before the state court did not bar

---

[6] Notably, Threlkeld made no argument to the state appellate court or to this court that counsel was ineffective in failing to investigate and discover Wittingham or that he was aware of Wittingham's potential testimony prior to trial. Thus, Threlkeld has defaulted any such claim. *Suh v. Pierce*, 630 F.3d 685, 689 (7th Cir. 2011). Even if he had, such an argument would be baseless. At the time of the trial, Threlkeld was alleged to have murdered someone in the presence of Wittingham's daughter in a fit of jealous rage and had engaged in a series of violent acts towards Wittingham's daughter prior to the alleged murder. Counsel can hardly be faulted for failing to surmise that Wittingham would have anything positive whatsoever to say about Threlkeld's character.

*habeas* relief and further determined that the veracity of petitioner's evidence required testing would an evidentiary hearing be necessary. *Id.* Because the Court has determined that none of Threlkeld's claims have merit, no evidentiary hearing is necessary to test the veracity of his proposed evidence.

An appeal from a denial of a petition for a writ of *habeas corpus* can be taken only if a petitioner makes a substantial showing of the denial of a constitutional claim. 28 U.S.C. § 2253(c)(2). To meet this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockerell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Threlkeld asserts that the claims are debatable, but provides no reasoning to support his assertion. The Court disagrees. Threlkeld's argument that the evidence was insufficient to support his conviction is based entirely upon a statement that is contrary to the standard for reviewing such claims as set forth in *Jackson*. He cites no relevant Supreme Court precedent in support of his prior bad acts argument and it is not cognizable on *habeas review*. His argument that trial counsel should have called Wittingham is also based upon an inaccurate statement of the law for reviewing such claims. The only argument that conceivably is debatable is his argument regarding counsel's failure to present a voluntary intoxication defense. Even in this argument, Threlkeld misstates Illinois law.

The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

_11/28/11_
Dated

_Wm. J. Hibbler_
Hon. William J. Hibbler
U.S. District Court